IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUKE DYER, | ) |
| | ) CIVIL ACTION NO. 21-1532 |
| Plaintiff, | ) |
| | ) |
| vs. | ) JURY TRIAL DEMANDED |
| | ) |
| CONNELLSVILLE HOUSING AUTHORITY; | ) |
| CAROL L. STAINES, Individually and/or | ) |
| as agent for Connellsville Housing Authority; | ) |
| JAMIE VILELLA, Individually and/or as Agent | ) |
| for Connellsville Housing Authority, and; | ) |
| KEN TETIL, Individually and/or as Agent for | ) |
| Connellsville Housing Authority, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT ON BEHALF OF PLAINTIFF LUKE DYER**

**I.**

**NATURE OF ACTION**

1. Plaintiff, a resident of Fayette County, Pennsylvania, brings this action seeking declaratory and injunctive relief and actual, compensatory, and punitive damages for violations of his statutory right to equal housing opportunity without regard to disability.

**II.**

**JURISDICTION**

2. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 *et seq*., ("FHAA"), the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C § 794(a), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq*.

3. Jurisdiction is conferred on this Court by virtue of 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(4), 28 U.S.C. § 2201, and 42 U.S.C. § 3613 (a).

### III.

### VENUE

4. Venue is properly in this District pursuant to 28 U.S.C. § 1391 (b) in that the actions underlying the complaint took place in this judicial district.

### IV.

### PARTIES

5. Plaintiff Luke Dyer, ("Plaintiff"), is an adult individual and citizen of the United States and currently resides at 2A North Manor, Connellsville, Pennsylvania 15425. At all times pertinent to this Complaint and through the current date, Plaintiff has been a person with numerous visible physical disabilities which substantially limit one or more major life activities.

6. Due to these disabilities, Plaintiff requires the use of a motorized wheelchair and thus needs substantial daily help, including overnight assistance, from his in-home health aides. Plaintiff is a disabled person as that term is defined by the FHAA.

7. Defendant, Connellsville Housing Authority ("HA"), a public housing authority funded by the United States Department of Housing and Urban Development. Upon

information and belief, Connellsville Housing Authority is the owner and operator of North Manor Apartments, an apartment complex in Connellsville, Pennsylvania.

8. Defendant, Carol L. Staines ("Defendant Staines"), an adult individual, is a citizen of the United States. At all dates pertinent to this Complaint, Defendant Staines was and is the Executive Director for Connellsville Housing Authority with an office at 121 W. Peach Street, Connellsville, Pennsylvania 15425. Defendant Staines is employed by Connellsville Housing Authority.

9. Defendant, Jamie Vilella, ("Defendant Vilella"), an adult individual, is a citizen of the United States. At all dates pertinent to this Complaint, Defendant Vilella was and is a manager for Connellsville Housing Authority with an office at 121 W. Peach Street, Connellsville, Pennsylvania 15425. Defendant Vilella is employed by Connellsville Housing Authority.

10. Defendant, Ken Tetil, ("Defendant Tetil"), an adult individual, is a citizen of the United States. At all dates pertinent to this Complaint, Defendant Tetil was and is a manager for Connellsville Housing Authority with an office at 121 W. Peach Street, Connellsville, Pennsylvania 15425. Defendant Tetil is employed by Connellsville Housing Authority.

## V.

## **FACTS**

11. In December of 2013, Plaintiff suffered from a stroke, which caused him to have right-sided deficits. As a consequence of the limitations imposed by his physical disabilities, Plaintiff uses a motorized wheelchair. In order to maintain his independence, he requires the assistance of aides to support him with his daily living activities.

12. At all times pertinent to this Complaint and through the current date, Plaintiff has been disabled and used a motorized wheelchair.

13. Plaintiff knows and is acquainted with Staines, Vilella, and Tetil and each of them are familiar with Plaintiff's physical disabilities and his limitations due to his physical disabilities.

14. At all times during Staines' employment at North Manor, she had knowledge of Dyer's disability and his need for aides.

15. At all times during Vilella's employment at North Manor, she had knowledge of Dyer's disability and his need for aides.

16. At all times during Tetil's employment at North Manor, he had knowledge of Dyer's disability and his need for aides.

17. On April 1, 2017, Plaintiff moved onto the property at North Manor.

18. In the lease signed by Plaintiff, it states "If during the term of this Lease, the Tenant by reason of physical or mental impairment, is no longer able to:

    1. Maintain the premises in a clean, safe, and livable condition;

    2. Care for his/her own physical needs; or

    3. Is disruptive, abusive, or otherwise interferes with the quiet enjoyment of other tenants; AND

    4. Cannot make arrangements for someone to aid him/her in maintaining the premises in a safe, livable condition, and caring for his/her physical needs,

    THEN: the PHA will assist the Tenant, or designate member(s) of the Tenant's family to find more suitable housing, and move the Tenant from the premises. If there are no family members willing or able to take responsibility for moving the

> Tenant, the PHA will attempt to work with the appropriate agencies to secure suitable housing, and will terminate the Lease."

19. As a result of Plaintiff's disability, he has three aides through County HomeMakers that spend the hours of 10:30 AM until 10:30 PM with him. These aides are unable to cover overnight care. County HomeMakers requires Plaintiff to have a "back-up" plan for overnight care, as his insurance does not cover anyone to stay overnight with him. Plaintiff's symptoms dictate whether overnight care is required.

20. Plaintiff was not required to report daytime aides to Defendants under the lease agreement.

21. Plaintiff was unaware of any policy requiring him to report an overnight aide for sporadic use.

22. Because of program rules prohibiting overnight guests for more than 14 days, Plaintiff believed that his aide providing overnight care needed to be added to the lease.

23. Prior to receiving notice, his use of an overnight aide did not violate the lease provisions.

24. On August 7, 2019, based upon an increased need for an overnight aide, Plaintiff called Defendant Vilella and inquired about how to get another occupant added to his unit.

25. On information and belief, on August 7, 2019, Plaintiff made a request for a reasonable accommodation to permit him to have an aide stay with him overnight.

26. In response, Defendant Vilella denied his reasonable accommodation request, telling him that since he lived in a one-bedroom unit he was only permitted to add someone to the unit if they were a couple and that persons of the opposite sex or unrelated adults

could not share a room. There was no further explanation given to Plaintiff. Plaintiff was not provided the opportunity to transfer to a two-bedroom unit to meet his needs.

27. When denying Plaintiff's reasonable accommodation request, Defendants did not engage in the interactive process.

28. Following the denial of the reasonable accommodation, Plaintiff continued to require the assistance of an overnight aide and had a family member provide this support on approximately 10 occasions. Plaintiff remained compliant with the overnight guest policy.

29. On or about October 16, 2019, without receiving any prior notices or warnings, Plaintiff received an Eviction and Vacate Notice, as well as a Lease Termination Notice, from Defendants, signed by Defendant Staines. The notice stated that Plaintiff violated Section I. Description of Parties and Premises, which states that the premise was to be occupied as a private residence, solely for the Tenant and family members on Part II of the lease agreement. The Notice stated that Plaintiff had repeatedly violated this section of lease. The notice stated that Plaintiff had thirty (30) days to vacate the premises.

30. On October 17, 2019, Plaintiff requested and secured legal representation from Southwestern Pennsylvania Legal Services, ("SPLS"), a legal services program having its principal offices at 10 West Cherry Avenue, Washington, Pennsylvania 15301 for help with his Landlord-Tenant case. Believing that there were fair housing implications, it was referred to SPLS' Fair Housing Law Center.

31. On October 21, 2019, Plaintiff requested a grievance, a right afforded to him in the Lease Termination Notice. In addition to making this timely request, Plaintiff provided

Defendants with a letter explaining his medical situation and verification of his medical need to the management office.

32. On October 25, 2019, a grievance dispute meeting was held with Defendants Staines, Tetil, Viella, Plaintiff and two of his aides, Jennifer McClain and Kathren Nebraska in attendance. At the meeting, Plaintiff explained that Christopher Sherrick, a friend and distant relative of Plaintiff, had stayed with Plaintiff on approximately ten (10) nights due to his medical needs. Ms. McClain explained that this help was necessary and required and that Plaintiff's insurance would not cover a paid overnight aide, which forced him to ask a friend or family member to help him.

33. Ms. McClain then gave Defendants a letter from Sandra Hrabczuk, a Service Coordinator from County HomeMakers Service Coordination Entity, Inc., which explained that Plaintiff's diagnosis requires him to have a caregiver to assist him with daily tasks and that he required overnight help due to this.

34. At this meeting, Plaintiff learned that Defendants required the name of any individual providing overnight care.

35. During this meeting, when the parties were discussing Plaintiff's need for an overnight aide, Defendant Staines stated that if Plaintiff needed this much help, specifically at night, that he needed to live elsewhere, because there were "places for that."

36. On October 28, 2019, Plaintiff received a letter from Defendants, entitled "Minutes of the Grievance Dispute of Tenant," signed by Defendant Vilella, explaining that Defendants decided to move forward with the eviction.

37. The meeting minutes confirmed that Defendants encouraged Plaintiff to look into independent living options: "Executive Director, Carol Staines, advised the provided

independent living housing to individuals."

38. On October 31, 2019, Plaintiff's counsel sent a request for a reasonable accommodation to Defendants, asking that Plaintiff be granted a reasonable accommodation to have an overnight aide and rescind the Notice to Quit, and gave them until November 12, 2019 to respond to this request.

39. On the same day, Plaintiff received another lease termination notice explaining that he was being evicted for having another occupant in his apartment and that he had to vacate the apartment by November 30, 2019. Plaintiff was again given the option to request another grievance meeting, which counsel did via certified mail on November 1, 2019. This request went unanswered.

40. On November 1, 2019, Plaintiff's counsel received a call from Defendants' counsel and Defendant Titel. Defendant Tetil explained the procedure for having a caretaker. Plaintiff's counsel provided this information to Plaintiff following the call.

41. Plaintiff's counsel asked Defendant Tetil if this process had ever been explained to Plaintiff. Defendant Tetil admitted they had never explained the procedure for having a caretaker to Plaintiff and testified to this on December 12, 2019 at the Magisterial District Judge hearing.

42. During this call, Defendant Tetil stated that Plaintiff's current overnight aide would not meet program requirements.

43. Defendant Tetil asserted that Plaintiff's need for care should be a factor in the eviction and further questioned why Plaintiff was living in public housing if he needed around the clock care.

44. On November 7, 2019, Plaintiff's counsel followed up on previous reasonable accommodation requests, reminding Defendants that failure to grant this request and withdraw the pending eviction would be a violation of Plaintiff's fair housing rights.

45. Defendants' counsel responded and requested the name of Plaintiff's possible aides. This information was provided to Defendants' counsel on November 12, 2019, along with another copy of the letters from Plaintiff's PCP and Ms. Hrabczuk.

46. On November 21, 2019, after agreeing to provide overnight care for Plaintiff, Heath Dyer, Plaintiff's brother, went to Defendants' main office to give them permission to run a background check.

47. While processing Heath Dyer's information, Defendant Tetil commented that he did not know why it was so important for Plaintiff to live at the property because there were other places he could live.

48. On November 26, 2019, Heath Dyer was approved to operate as Plaintiff's overnight aide.

49. On December 2, 2019, only six (6) days after the approval of an aide, Plaintiff received a magistrate complaint for recovery of real property filed before Magisterial District Judge Ronald J. Haggerty, which stated that a forfeiture has resulted by reasons of a breach of the conditions of the lease, to wit, "unauthorized person staying in the apartment." There was no other violation of the lease listed. A hearing was scheduled for December 12, 2019.

50. Following the initial Notice to Quit, the only individuals providing Plaintiff with overnight care resided at the property.

51. On December 12, 2019, a hearing was held in front of the Honorable Ronald J. Haggerty, where a decision was rendered in favor of Plaintiff.

52. At the hearing, Defendant's counsel attempted to question Plaintiff as to whether he had ever considered moving into an assisted living facility.

53. As a direct result of the willful and intentional conduct of the Defendants, Plaintiff's fair housing rights were violated, and he was compelled to sacrifice critical care needed to provide him the equal opportunity to use and enjoy his dwelling. He suffered extreme humiliation and emotional distress, in that he was made to feel inadequate and inconsequential as a person, and unacceptable as a tenant. All such action and actions were predicated upon his status as a person with a disability.

## VI.

## **FAIR HOUSING VIOLATIONS**

54. The allegations in the preceding paragraphs 1 through 53 are incorporated by reference herein with the same force and effect as if set forth in full.

55. Defendants refused to make a reasonable accommodation in the rules, practices or services of the Housing Authority when such an accommodation was necessary to afford Plaintiff an equal opportunity to use and enjoy his dwelling, in violation of 42 U.S.C. § 3604 (f)(3)(B).

56. Defendants made discriminatory statements about Plaintiff and his disability in violation of 42 U.S.C. § 3604 (c).

57. Defendants interfered, intimidated, coerced, and harassed Plaintiff when they retaliated against him following his reasonable accommodation request in direct contravention of 42 U.S.C. § 3617.

58. Defendants placed different terms and conditions on Plaintiff's tenancy by requiring Plaintiff to be able to live independently, in violation of 42 U.S.C. § 3604 (f)(2).

59. Defendants discriminated in the rental, or otherwise made unavailable or denied, this dwelling to Plaintiff because of his disability, in violation of 42 U.S.C. § 3604 (f)(1).

60. Defendants, as a recipient of federal financial assistance, discriminated against Plaintiff due to his disability by refusing to make available housing and services in a nondiscriminatory manner, in violation of 29 U.S.C. § 794 (a).

61. Plaintiff is an aggrieved person, as defined in 42 U.S.C. §3602(i) and has suffered distinct and palpable injuries as a consequence of Defendants' above-described actions.

62. Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of Plaintiff.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, by and through his attorneys, Southwestern Pennsylvania Legal Services, Inc.:

63. That this Court declare the actions of the Defendants complained of herein to be in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*;

64. That this Court strike discriminatory portions of Connellsville Housing Authority's leases that allow Defendants' to discriminate based on disability status;

65. That this Court enjoin and restrain Respondents, their officers, employees, agents, successors, and all other persons in active concert or participation with Respondents from:

    i. Refusing to make reasonable accommodation in the rules, policies, practices, or services, when such accommodations may be necessary to

      afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

  ii. Making statements with respect to a dwelling that indicate discrimination or an intent to discriminate on the basis of disability, in violation of 42 U.S.C. § 3604(c).

  iii. Discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of a disability, in violation of 42 U.S.C. § 3604(f)(1);

  iv. Discriminating against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a disability, in violation of 42 U.S.C. § 3604(f)(2);

  v. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person, to exercise or enjoy any right granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617;

  vi. Violating section 504 of the Rehabilitation Act of 1973, by discriminating against qualified individuals with disabilities by refusing to make housing and services available in a nondiscriminatory manner, in violation of 29 U.S.C. § 794 (a).

66. Order Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the

effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants or residents are discriminated against because of disability;

67. Order Defendants to undergo fair housing training;

68. Order Defendants to pay Plaintiff's reasonable costs and reasonable attorney's fees in this action; and

69. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues to which it is entitled.

Dated: October 25, 2021

Respectfully Submitted,

s/Keirstyn N. Marcucci

Keirstyn N. Marcucci, Esq.
PA ID No. 325658
Southwestern PA Legal Services
10 West Cherry Avenue
Washington, PA 15301
(724) 884-2787


 s/G. Clayton Nestler

G. Clayton Nestler, Esq.
PA ID No. 30774
Southwestern PA Legal Services
10 West Cherry Ave.
Washington, PA 15301
(724) 225-6170

s/ Jaime C. Milligan

Jaime C. Milligan, Esq.
PA ID No. 208772
Southwestern PA Legal Services
10 West Cherry Avenue
Washington, PA 15301
(724) 225-6170